# Richmond

## SAMUEL LEGIONS V. COMMONWEALTH.

January 18, 1943.

Record No. 2652.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Charles H. Houston* (Washington, D. C.) and *Oliver W. Hill*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Carrington Thompson, Special Assistant,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

Samuel Legions, a young colored man, was indicted on December 8th, 1941, in the circuit court of Loudoun County, charged with having committed the crime of rape, on October the 27th, 1941, upon Viola Miller, a white woman.

. At the April term 1942, of the court, he was tried and found guilty by a jury. The verdict was approved by the court and his punishment was fixed at the extreme penalty of the law.

His conviction depends primarily upon the testimony of the prosecutrix and that of her husband.

■ This testimony, in the light of the admitted physical surroundings, and the absence of incidents which naturally ensue, is so contrary to human experience and so inherently incredible as to be totally insufficient to justify the verdict of guilt beyond a reasonable doubt.

For this reason the judgment must be reversed.

Shorn, as much as properly may be, of revolting details, the testimony of the prosecutrix and her husband is, that they lived in the town of Leesburg, in a section almost exclusively inhabited by negroes. Their house was a two room one with an attic. The room they occupied as a bed-room on the ground floor had a door and a window looking directly towards the street and opening almost upon it, the bottom of the window being so close to the ground that one could step out of it if the sash were up. The other room was used as a kitchen and dining room.

The street light shone directly into the bedroom window.

The house is directly across the street from a negro restaurant. It is near enough for loud talking in the house

to be heard in the restaurant. This was affirmed by Mrs. Miller. It is in a thickly settled neighborhood. Quite a number of persons live nearby among them, the Andersons, Veneys, Hackneys, and Mr. Hough, who is the custodian of the city pumping station. An outcry of distress would likely have reached the ears of these people, or some of them, certainly of those in the restaurant.

The Millers went to bed on the night of the alleged attack about eight o'clock. Around ten they were rudely awakened by the falling of a window-shade, which was a premonitor of the presence of the intruder. Both of them knew him by sight, indeed they all had lived in Berryville, Virginia, before coming to Leesburg. They were sleeping in a double bed with their month old baby between them. They recognized the accused who threatened to kill all three of them if any outcry were made. They saw no weapon of any kind in his hands, nor did he say or pretend that he had any. The husband struck the accused with the window-shade and then pushed him into the window, breaking out the sash. The man went around to Mrs. Miller's side of the bed and at his command she moved over and he attempted to get in it, but lack of room and the wailing of the baby caused him to desist. He then got up and took the prosecutrix by the arm and told her to get up. She obeyed because she was afraid not to. He said if she cried out he would kill her. He pulled her into the kitchen and accomplished his purpose across the table, but while this was in progress he broke off the relation long enough to get up and call to Miller to make the baby stop crying and then resumed the operation. Miller called back and said that he could not do anything with the baby. This is said to have taken place while this negro was raping his wife. What an indictment to lodge against any human being!

Miller was forty-eight years old—almost in the prime of life. He was regularly engaged in manual labor. He was working on the town dump-truck. When he was asked if he was passing himself off as a weakling, he said he was not. In the presence of a tragedy that could mean nothing but

disgrace and humiliation to the wife of his bosom, to himself, and to his children he was as servile as a slave. A few steps would have taken him out of the house and on to the street where he could have given an alarm which would have saved his wife. An outcry would have had the same effect. His state of utter inanity is inconceivable. It is beyond comprehension. It is just unbelievable.

Here is the amazing picture and setting. A negro man enters a white man's dwelling, unarmed, save a pocket knife, which was never opened or brandished, in a thickly settled neighborhood, at an hour when people were accustomed to be up and about, and assembling particularly at a negro restaurant. He attempts to force his way into the bed in which the man and his wife were sleeping with their child. Foiled in that he compels the wife to go into another room where he accomplishes his nefarious purpose. This in a house affording quick and easy access to the outside where aid and help would be readily at hand. But no alarm is given—no protest—no attempt to escape—no resistance from either the prosecutrix or her husband, except the ineffectual and feeble efforts of the latter, which have been referred to, which were not followed up—nothing but a shameful surrender and capitulation descending almost to complacence. The whole thing does such shocking violence to any righteous conception of human conduct as to be unbelievable even to the most credulous and naive.

█ Of course we are mindful of the force of a jury's verdict, approved by the trial court, but we have said time and again that we are not required to believe that which we know from human experience is inherently incredible. "What we know as men we are not required to·forget as judges."

See *Terry* v. *Commonwealth*, 174 Va. 507, 6 S. E. (2d) 673; *Vance* v. *Commonwealth*, 155 Va. 1028, 154 S. E. 512.

While we do not know what occurred on the night of the alleged offense, our common sense and knowledge of human nature tell us that that which the prosecutrix and her husband have related did not occur.

Having concluded that the principal testimony upon which the accused has been convicted is not sufficient to sustain the jury's verdict, we find it unnecessary to consider any other assignments of error.

For these reasons the verdict of the jury is set aside, the judgment is reversed and the case is remanded to be further proceeded with as the Commonwealth may be advised.

*Reversed and remanded.*