## Richmond

RALPH BARKER AND HERBERT GARRETT V. COMMONWEALTH OF VIRGINIA.

November 26, 1956.

Record No. 4608.

Present, Hudgins. C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

Case submitted on briefs.

*Jerry E. Dishner*, for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General* and *Thomas M. Miller, Assistant Attorney General*, for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

Ralph Barker and Herbert Garrett were charged in separate indictments with raping Eva Geneva Hayes, a young woman 18 years of age. They elected to be tried together. The jury in the first trial were unable to agree. On the second trial each defendant was found guilty and sentenced to five years confinement in the penitentiary.

To review the judgments entered on the verdicts the two defendants obtained this appeal.

Defendants' first assignment of error, namely, that the "court erred in drawing, selecting and empanelling of the jury", is not well taken because no specific objection was made thereto before the jurors were sworn, nor does it appear that the alleged irregularity was intentional or was such as would probably cause injustice to the Commonwealth or the accused. Code § 19-176.

The decisive question raised is whether the evidence is sufficient to sustain the verdict. This necessitates a review of the testimony, which may be summarized as follows: Miss Hayes resided with her parents in Norton, Virginia, but for several months preceding the date of the alleged assault she had been employed as a baby sitter in the home of Mrs. Sophia Harkleroad and her husband in Kingsport, Tennessee. On Saturday preceding the alleged attack she visited her parents in Norton. On the next day, Sunday, she bought a bus ticket for transportation from Norton to Kingsport by way of Big Stone Gap.

Miss Hayes testified that on arrival in Big Stone Gap it became necessary for her to change buses. While she was seated in the bus terminal waiting for the Kingsport bus defendants came in and introduced themselves. After a brief conversation she accepted their invitation to ride with them in their automobile to Kingsport. *En route* they turned off the main highway down a side or secondary road for approximately a mile, where defendants (she did not say which one) threatened her with a gun and a knife, though she saw neither a gun nor a knife in the possession of either. Barker hit her in the face with his fist. "Both the defendants raped me while we were stopped there. Defendant Garrett raped me first and then Defendant Barker raped me. They had sex relations with me against my will and without my consent." The three then drove on towards Kingsport. *En route* defendants said (which one is not stated) "they were about out of gasoline and that they would let me out in Gate City. I told them that I had a dollar for gasoline and I gave it to them." Barker, then driving, stopped at a gas station in Gate City, ordered a dollar's worth of gasoline, got out and went towards the front of the car. Garrett and the prosecutrix got out of the rear seat, walked around and the prosecutrix said "I straightened up my clothes." Then the car, with the three sitting on the front seat, was driven from Gate City to the bus terminal in Kingsport. The prosecutrix and Barker went into the

bus terminal and ascertained that the bus upon which she had expected to return to Kingsport had already arrived. Her delay in arrival at the bus terminal caused the prosecutrix to miss keeping her date with a friend who had promised to meet her there. At her request Barker signalled for a taxicab, walked with her to it, opened the door and asked the driver to take her home.

The prosecutrix also testified that she thought her employers, Mr. and Mrs. Harkleroad, had moved out on Bloomingdale Highway so she requested the taxi driver to take her there, but on arrival there she found that her employers had not moved. She then had the taxi driver take her to Dorothy Street, where her employers had been living all the time. When she knocked on Mrs. Harkleroad's front door about 11 P. M. the light was turned on and she went in, spoke to Mrs. Harkleroad, whom she said was her very close friend, and went to bed. The next morning she prepared breakfast and talked with Mr. and Mrs. Harkleroad while they were eating. She said nothing to them about the alleged assault, though Mrs. Harkleroad said that the prosecutrix seemed somewhat upset.

At approximately 11 A. M. of the same day the prosecutrix went to the store owned and operated by one Ray Lane, whom she had promised to meet at the bus terminal the night before. He asked her what was wrong with her. She thereupon told him of the alleged assault. Lane called and reported the matter to the Chief of Police of Kingsport. This police officer came over to see the prosecutrix and said she was crying and had a bruised face and black eye.

The testimony for defendants is that about 7 P. M. on the day in question they went into the bus terminal at Big Stone Gap and saw Miss Hayes sitting alone. She smiled at them. Barker went over, introduced himself and his friend, Herbert Garrett, and while they were seated in the terminal Barker began to make love to her and put his arms around her. They got into defendants' automobile and drove on towards Kingsport, with Barker and Miss Hayes on the back seat. While the car was in motion on the main highway he, with the consent of the prosecutrix, had intercourse with her, after which he and Garrett exchanged seats. He drove the car on to Gate City while Garrett had intercourse with her. Before reaching Gate City Barker told the prosecutrix that they were about out of gasoline and would have to let her out there since "we didn't have enough gasoline to go on to Kingsport, Tennessee, and then back to Big Stone Gap, Virginia. Miss Hayes said that she had a dollar and that she

would buy a dollars worth of gasoline. She gave me the dollar and I stopped at the service station in Gate City, Virginia. We told the attendant that we wanted a dollar worth of gasoline. While he put the gasoline in the car, I got out and checked the water in the radiator of the car." Garrett and Miss Hayes got out of the car. "We all got back into the car and in the front seat. We then went to the bus terminal in Kingsport. Miss Hayes told us that she was expecting someone to meet her at the terminal. Miss Hayes and I went into the terminal and inquired if the bus from Big Stone Gap had arrived, and we were informed that it had. We went back outside and I asked this taxi driver if he would take Miss Hayes home." He told her goodbye and said that he would see her again.

The narrow, vital issue is whether defendants had intercourse with the prosecutrix by force and against her will.

The Commonwealth relies wholly upon the uncorroborated testimony of the prosecutrix to sustain the affirmative of this issue. While we have held such testimony, when credible, to be sufficient to support a conviction, we have consistently refused to approve a conviction where such testimony is contrary to human experience and is inherently incredible. *Vance* v. *Commonwealth*, 155 Va. 1028, 154 S. E. 512; *Grinnelle* v. *Commonwealth*, 157 Va. 915, 161 S. E. 888; *Addington* v. *Commonwealth*, 161 Va. 975, 170 S. E. 565; *Legions* v. *Commonwealth*, 181 Va. 89, 23 S. E. 2d 764.

According to the testimony of deputy sheriff Bill J. Pendleton, the testimony of the prosecutrix in the trial differed in many respects from the testimony she gave before the trial justice. This witness said that the prosecutrix admitted, while a witness before the trial justice, that while in the bus station at Big Stone Gap Ralph Barker "tried to make love with her and to feel around with her"; that Ralph Barker first had sex relations with her and then Herbert Garrett, and that both defendants had sex relations with her while the car was in motion and on the main highway between Big Stone Gap and Gate City. They did not turn off the main highway on a secondary road, that the car stopped but once between the points named, and then only long enough to change drivers.

It is improbable and contrary to human experience for an innocent and chaste woman to permit two strange men to introduce themselves to her in a public place and after one of them had hugged her and felt her legs to voluntarily ride with them at night as far as from Big Stone Gap, Virginia, to Kingsport, Tennessee. Not only that,

but after being severely beaten, resulting in a bruised face and a black eye and after being forced to have sexual intercourse with two men, she continued the trip with them without protest to Gate City, where she not only failed to make a report of the alleged assault and leave the men, but on the contrary paid for additional gas in order to ride with them from Gate City to Kingsport. There she got out of the car, walked into the bus terminal with one of the men, made no report of the alleged attack upon her, accepted courtesies from Barker, who called a taxicab for her. She made no complaint to the taxi driver, or to her employers that night or the next morning.

It may or may not be significant to note that no one testified that he saw the bruised face and black eye of the prosecutrix until after her friend, Ray Lane, had requested her to explain why she failed to keep her appointment with him at the bus station the night before.

Barker testified, and this part of his testimony is not contradicted by the prosecutrix, that all three parties had a good time on the trip, Miss Hayes voluntarily took her panties off and put them in a bag. They all met on a friendly basis, so continued on the ride from Big Stone Gap to Kingsport and parted on the same basis.

We are not unmindful of the force of a jury's verdict approved by a trial court, but we are not required to believe that which is contrary to human experience and inherently incredible. The testimony of the prosecutrix is too fantastic and improbable to sustain the finding of guilty beyond a reasonable doubt.

The verdict of the jury is set aside, the judgment of conviction is reversed and the prosecution dismissed.

*Reversed and dismissed.*